## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| ANDREW PERRONG, on behalf of himself and others similarly situated, | : : : | Case No. |
| Plaintiff, | : : | CLASS ACTION COMPLAINT |
| v. | : : : | JURY DEMANDED |
| INNOVATIVE TELESERVICES, INC. | : : : | |
| Defendant. | | |

## CLASS ACTION COMPLAINT

### Preliminary Statement

1. Plaintiff Andrew Perrong ("Plaintiff") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

2. Defendant Innovative Teleservices Inc. ("Innovative" or "Defendant") sent pre-recorded telephone calls to telephone numbers that were charged per the call, including the Plaintiff, and cellular telephones, which is prohibited by the TCPA.

3. The Plaintiff did not consent to receive the call, which was placed to him for purposes of soliciting payments. Because automated calling campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal calls from or on behalf of Defendant.

4. A class action is the best means of obtaining redress for the Defendant's wide scale illegal calling and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

5. Plaintiff Andrew Perrong is a Pennsylvania resident.

6. Defendant Innovative is a Michigan corporation with its principal place of business of 2740 Pine Grove Ave, Port Huron, MI 48060.

7. The Defendant engages in calling from this district, as it did with the Plaintiff.

## Jurisdiction & Venue

8. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims*, 132 S. Ct. 740.

9. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this district and 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred from this district, as the telemarketing calls to the Plaintiff were placed from or directed from this district.

## The Telephone Consumer Protection Act

10. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

11. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service … or any service for which the called party is charged for the call." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

The TCPA Prohibits Automated Telemarketing Calls

12. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a paging service, cellular telephone service…." *See* 47 U.S.C. § 227(b)(1)(A)(iii).

13. The TCPA provides a private cause of action to persons who receive such calls. *See* 47 U.S.C. § 227(b)(3).

14. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

The Growing Problem of Automated Telemarketing

15. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls*, FCC, (July 22, 2016, 10:30 AM), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls [https://archive.is/w2afC] (statement of FCC chairman).

4

16. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

17. In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Fed. Trade Comm'n, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc [https://archive.is/oPZSW].

18. *The New York Times* recently reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, Yes, It's Bad. Robocalls, and Their Scams, Are Surging, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-rise-illegal.html [https://archive.is/mS9Fb]; see also Katherine Bindley, Why Are There So Many Robocalls? Here's What You Can Do About Them, Wall St. J. (July 4, 2018, 10:30 PM), https://www.wsj.com/articles/why-

there-are-so-many-robocalls-heres-what-you-can-do-about-them-1530610203 [https://archive.is/V2UYp].

19. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years. *U.S. Endures 4.7 Billion Robocalls in July, According to YouMail Robocall Index*, YouMail (Aug. 6, 2019, 9:00 AM), https://www.prnewswire.com/news-releases/us-endures-4-7-billion-robocalls-in-july-according-to-youmail-robocall-index-300895976.html [https://archive.is/pnU5s].

20. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. *Consumer Complaint Data Center*, FCC, www.fcc.gov/consumer-help-center-data [https://archive.is/wip/ojuBF].

**Factual Allegations**

21. Defendant is in the business of providing teleservices for third party companies, including through the use of pre-recorded messages.

22. Defendant's strategy for generating new customers involves the use of an automatic telephone dialing system ("ATDS") sending out pre-recorded messages known as an "avatar" to solicit business.

23. Recipients of these calls, including Plaintiff, did not consent to receive them.

24. The Defendant uses this equipment because it allows for thousands of automated calls to be placed at one time and allows them to be automatically screened before talking to a telemarketing representative, but its telemarketing representatives, who are paid by the hour, only talk to individuals who pick up the telephone.

25. Through this method, the Defendant shifts the burden of wasted time to the consumers it calls.

Calls to Plaintiff Perrong

26. Mr. Perrong is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

27. On May 22, 2020, Mr. Perrong received a call from the Defendant using a series of pre-recorded messages.

28. The call was made to Mr. Perrong's telephone number, 215-725-XXXX.

29. Mr. Perrong is charged for each call made to that number.

30. Mr. Perrong is charged a $0.005 ring fee and $0.004 per minute for each call to that number.

31. The recorded messages solicited money from Mr. Perrong.

32. The call was generic in nature and sent using automated equipment.

33. Mr. Perrong received identical calls on May 27, 2020 and June 3, 2020.

34. After Mr. Perrong answered the calls, a series of pre-recorded messages played. The dialing was done automatically and not by a live individual because it would be incongruous to manually dial a call and then play recorded messages to the called party.

35. This signified that the calls were not initiated by a live individual.

36. As such, the dialing done was automatic.

37. The dialing system used can also produce numbers using a sequential number generator and dial the numbers automatically.

38. The dialing system can do this by inputting a straightforward computer command.

39. Following a command, the dialing system will sequentially dial numbers.

40. In that scenario, the dialing system could dial a number such as (555) 000-0001, then (555) 000-0002, and so on.

41. This would be done without any human intervention or further effort.

42. In fact, upon information and belief, Defendant uses GOautodial, a derivative of ViciDial, a popular ATDS. *See* Jack Juncaj, *GoAutoDial Initial*

*Install - Keyboard Not Working*, GOautodial Omni-channel Contact Center Suite Forums (Jan. 4, 2016), https://goautodial.org/boards/1/topics/8681 [https://archive.is/lSP9k].

43. When Plaintiff was transferred from the pre-recorded messages to a human agent, the transfer took approximately seventeen seconds and was accompanied by a balloon-popping sound.

44. The balloon-popping sound, known officially as the "droplet" sound, is an indicia of the ViciDial ATDS and its derivatives, such as GOautodial, and is played automatically as part of a macro when the Asterisk "meetme" application is executed and signifies that a new connection was established between the called party and the call center representative.

45. This further signifies that the call was not placed with a live individual, but rather that a live individual was connected a full one minute and forty-five seconds into the call.

46. The calls were not necessitated by an emergency.

47. Plaintiff's privacy has been violated by the above-described telemarketing robocalls from Defendant. The calls were an annoying, harassing nuisance.

48. Both Plaintiff and all members of the putative class, defined below, have been harmed by the acts of Defendant because their privacy has been

9

violated, they were annoyed and harassed, and, in some instances, they were charged for incoming calls. Plaintiff and the class members were also harmed by use of their electricity, bandwidth, memory and the intrusion on their telephone that occupied it from receiving legitimate communications.

## Class Action Allegations

49. As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff bring this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

50. The class of persons Plaintiff propose to represent is tentatively defined as:

> All persons within the United States to whom: (a) Defendant and/or a third party acting on its behalf made one or more non-emergency telephone calls; (b) to their cellular telephone number or to a number for which they are charged per the call; (c) using the telephone system(s) used in calling Plaintiff's telephone number or a pre-recorded message; and (d) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

51. Excluded from the class are the Defendant and any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

52. The class as defined above is identifiable through phone records and phone number databases.

53. The potential class members number at least in the thousands, since automated telemarketing campaigns make calls to hundreds or thousands of individuals a day. Individual joinder of these persons is impracticable.

54. Plaintiff is a member of the class.

55. There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

    a. Whether Defendant violated the TCPA by using automated telemarketing or pre-recorded messages to call cellular telephones or numbers that are charged per the call;

    b. Whether Defendant placed calls without obtaining the recipients' prior consent for the call; and

    c. Whether the Plaintiff and the class members are entitled to statutory damages because of Defendant's actions.

56. Plaintiff's claims are typical of the claims of class members. Plaintiff's claims, like the claims of the class, arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

57. Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class, he will fairly and adequately protect the interests of the class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

58. Common questions of law and fact predominate over questions affecting only individual class members. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

59. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

60. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

61. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Legal Claims

### Count One:
### Violation of the TCPA's Automated Calling Provisions

62. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

63. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to their cellular telephone numbers or numbers for which they are charged per the call for Plaintiff and members of the class using an ATDS and/or artificial or prerecorded voice.

64. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the class presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers or numbers for which they are charged per the call using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

65. Plaintiff and members of the class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular

telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

66. The Defendant's violations were negligent and/or knowing.

## Relief Sought

WHEREFORE, for himself and all class members, Plaintiff requests the following relief:

A. Injunctive relief prohibiting Defendant from calling telephone numbers advertising its goods or services, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

B. Because of Defendant's violations of the TCPA, Plaintiff seek for themselves and the other putative class members $500 in damages for each violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3).

C. An order certifying this action to be a proper class action under Federal Rule of Civil Procedure 23, establishing any appropriate classes the Court deems appropriate, finding that Plaintiff are a proper representatives of the class, and appointing the lawyers and law firms representing Plaintiff as counsel for the class; and

D. Such other relief as the Court deems just and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Respectfully submitted,

*/s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

*Counsel for Plaintiff*